## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALAN MCNICHOLS,<br>Individually and on behalf of all others<br>similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>GEICO GENERAL INSURANCE<br>COMPANY,<br><br>     Defendant. | Case No.: 20-cv-01497 |

## FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

## INTRODUCTION

1.      This is a class action lawsuit by Plaintiff, who was the named insured under a GEICO automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"), pursuant to which Defendant is required to pay the "Actual Cash Value" (or "ACV") of an insured vehicle in the event it is declared a "total loss."

2.      Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for GEICO's promise to repair any damage to an insured vehicle caused by a covered peril. However, GEICO's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, GEICO is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is

considered a "total loss." If a "total loss" occurs, GEICO's contractual obligation is limited to paying the ACV of the total-loss vehicle – defined in the Policy as the "replacement cost" of the vehicle, less depreciation/betterment.

3.      ACV, by definition in the Policy and under commonly applied insurance law, allows an insurer to account for depreciation of a vehicle. Because ACV allows GEICO to account for depreciation, ACV will always be less than the amount it would cost to repair or replace a vehicle that has experienced a total loss. Accordingly, GEICO elects to pay ACV as a general business practice every time an insured vehicle experiences a total loss.

4.      The goal of ACV in insurance contracts is indemnity. By promising to pay the cost to repair the vehicle but limited to ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position. To put insureds back into their pre-loss position after a total loss, Defendant is required to pay the cost to replace the insured vehicle, accounting for any depreciation in the vehicle's value.

5.      The cost to replace a vehicle in Connecticut includes costs an insured is required under state law to pay, including title transfer and registration fees, and other state and local regulatory fees (collectively "Regulatory Fees"). Because these Regulatory Fees are required costs associated with replacing a vehicle, Defendant's promise to pay the replacement cost of a vehicle includes a promise to pay these costs in the event an insured suffers a total loss.

6.      Plaintiff and the putative Class Members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements. GEICO did not. Rather, in addition to taking advantage of its ability under the Policy to decline to repair the damage to the insured vehicles, GEICO did not pay the costs to replace the total-loss vehicles notwithstanding its promise and obligation to do so. Instead, GEICO cut corners by declining to pay the insured

vehicle's replacement cost including unavoidable Regulatory Fees necessary to replace the insured total loss vehicle that was titled and registered.

7.     Defendant is a large private insurance company that, based upon Plaintiff's information and belief, collects hundreds of millions of dollars in private-passenger physical damage coverage premiums every year from its insureds. Among other coverages, Defendant offers collision and comprehensive physical damage coverage, under which GEICO promises to pay the replacement cost of total-loss insured vehicles, accounting for depreciation or betterment, in the unfortunate event an insured suffers a total loss to their insured vehicles. Nevertheless, upon information and belief, Defendant systematically underpaid the ACV of total-loss vehicles insured by Plaintiff and thousands of other putative class members.

8.     This lawsuit is brought by Plaintiff on behalf of himself and all other similarly situated insureds, who have suffered damages due to Defendant's practice of refusing to fully pay the ACV of insured vehicles in making total-loss payments to first-party insureds. Specifically, as a matter of uniform procedure, Defendant fails to include full ACV owed by failing to pay Regulatory Fees in making payment for total-loss claims.

9.     GEICO's failure to pay the full ACV of insured vehicles on first-party claims that GEICO determined to be a total loss constitutes a breach of the Policy and a breach of contract as to Plaintiff and every member of the putative Class.

## **THE PARTIES**

10.     At all times material hereto, Plaintiff, Alan McNichols, is and was a citizen of Stamford, Connecticut.

11.     At all times material hereto, GEICO is and was a foreign corporation organized and existing under the laws of the State of Maryland with its principal place of business in Maryland and is thus a citizen of Maryland.

## FACTUAL ALLEGATIONS

12.     Defendant utilizes a standard form Policy for all automobile policies issued in Connecticut. Defendant's standardized Policy language as to "physical damage" coverage is present in all GEICO's auto policies issued in Connecticut.

13.     Under Defendant's standard Policy language, Defendant promises to pay its insureds for "loss" to their covered vehicles, capped at ACV, the replacement cost.

14.     This is a standard limit of liability clause for automobile insurance policies and is applied universally throughout the insurance industry. *See New Appleman On Insurance Law Library Edition*, Vol. 6 § 62.08(1)(c) ("Rather than pay the actual cash value, an insurer has the option of paying the amount necessary to repair the damage or replace the damaged parts with property of like kind and quality. This option is typically elected when the vehicle is not a total loss."); *Couch On Insurance 3d*, § 176:4 ("Repair and replacement options are also generally inapplicable to circumstances of total loss.") (cites omitted).

15.     Plaintiff owned a 2005 Toyota RAV 4 Automatic, VIN No. JTEHD20V656023779 (the "Insured Vehicle").

16.     Plaintiff insured the 2005 Toyota RAV 4 Automatic under an insurance policy issued by Defendant.

17.     On or about August 22, 2017, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant (claim number 0043419620101049-01).

4

18.    Following the filing of the claim, Defendant determined that the cost to repair the vehicle exceeded the value of the vehicle.

19.    Because the cost to repair exceeded the value of the Insured Vehicle, GEICO determined the vehicle was a "total loss" and elected under the Policy to adjust and pay the ACV replacement cost of the vehicle instead of the higher cost to repair the vehicles.

20.    GEICO represented that it adjusted and paid the claim as the ACV of the Insured Vehicle.

21.    A vendor, CCC, was hired by GEICO to compute the components that make up the determination of the Insured Vehicle's ACV.

22.    One component of ACV, the "Adjusted Vehicle Value," was calculated using a "Base Vehicle Valuation" based on the cost to purchase similar vehicles with similar conditions and mileage, with adjustments based on the vehicle's condition relative to that of comparable vehicle's condition and with comparison to other data. GEICO computed the Adjusted Vehicle Value to be $7,230.00. **Exhibit A** (Market Valuation Report).

23.    The condition and price adjustments in determining the Adjusted Vehicle Value account for the depreciation/betterment component of the ACV calculation as permitted in the limitation of loss. CCC then added the Vehicular Tax of $ 459.11 (6.35% x Adjusted Vehicle Value $ 7,230.00) to reflect the applicable state, county, and municipal taxes that would be added to the cost of the Insured Vehicle if it was replaced to arrive at the Insured Vehicle's "Value before Deductible" of $ 7,689.11. Exhibit A.

24.    CCC then deducted the policy deductible to $500 to arrive at the total estimated value of Plaintiff's insured vehicle of $7,189.11. Exhibit A.

25.     Based on the CCC determination of estimated vehicle value, Geico paid what it calculated due for ACV to be $7,189.11. **Exhibit B** (Total Loss Settlement Letter).

26.     Despite including sales tax, GEICO ignored and did not pay anything for other reasonably necessary Regulatory Fees required to be paid to replace the properly titled and registered Insured Vehicle. Exhibit B.

27.     Defendant's payment of the "adjusted vehicle value" but not Regulatory Fees and other reasonably necessary replacement costs constituted a breach of its insurance policy.

28.     Title transfer fees, registration fees and other state and local Regulatory Fees are mandatory applicable costs that must be paid to replace any vehicle in the State of Connecticut.

### Title Fees are Reasonably Necessary Replacement Costs

29.     Connecticut law requires that all vehicles be properly titled and registered in order to be legally operated on Connecticut roadways. Ct. Gen Stat. § 14-169 (2012) (title requirements); Ct. Gen Stat. § 14-12(a) (registration requirements).

30.     Reasonably necessary title fees in replacing Plaintiff's total loss vehicle are, at minimum, $25.00 plus a $10.00 administrative fee for a total of $35.00. In addition, where the Insured Vehicle's title included a recorded lien (lease or financed vehicle) there is an additional $11.00 mandatory title fee to title the replacement vehicle. https://portal.ct.gov/DMV/Fees/Fees/Fees-for-Registration.

### Registration Fees are Reasonably Necessary Replacement Costs

31.     No motor vehicle may be operated, towed, or even parked on any highway, unless it is registered with payment of concomitant registration and other Regulatory Fees.  Ct. Gen Stat. § 14-12(a) (registration requirements).

32.     Reasonably necessary registration fees are required to register a replacement vehicle are: (a) $132.00 Registration Fee; (b) $5.00 Plate Fee; (c) $ 15.00 Clean Air Act Fee; (d) $10.00 Lien Fee; (e) $15.00 Passport to the Parks Fee. https://portal.ct.gov/DMV/Registration/Transfer-Plates-and-Ownership/Transfer-Your-Plates.

### **Inspection Fees are Reasonably Necessary Replacement Costs**

33.     No motor vehicle may be operated in Connecticut unless such vehicle has been presented for inspection and concomitant fees are paid. The commissioner may deny the issuance of registration to the owner of a motor vehicle, or the renewal of registration to any such owner, or suspend or revoke any registration that has been issued, if such motor vehicle is not in compliance with the inspection requirements. Operation of a vehicle not in compliance with the inspection requirements is an infraction subject to a fine for each violation. Ct. Gen Stat. § 14-164(d).

34.     Reasonably necessary emissions inspection fees required to register a vehicle replacing a total loss Insured Vehicle that was properly registered are: (a) $40 Emissions Exemption Fee (if vehicle is four years old or newer); (b) $10.00 Greenhouse Gas Fee (if vehicle has certificate of origin); or (c) $20.00 Emissions Testing for all other vehicles. https://portal.ct.gov/DMV/Fees/Fees/Fees-for-Registration.

35.     The cost for reasonably necessary Regulatory Fees to replace Plaintiff's Insured Vehicle are: (a) $20.00 Emissions Testing Fee; (b) $15.00 Clean Air Act Fee; (c) $15.00 Passport to the Parks Fee; (d) $21.00 Tag Transfer Fee; and (e) $35.00 Title Fee.

36.     In breach of its contract with Plaintiff, Defendant did not include reasonably necessary Regulatory Fees of $91.00 in the ACV payment for Plaintiff's total loss.

37.    Plaintiff replaced the total-loss Insured Vehicle with a replacement vehicle and the cost to replace that vehicle, including the Regulatory Fees, are included in the replacement costs Plaintiff incurred.

38.    Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of the total loss of his vehicle.

### THE GEICO INSURANCE POLICY

39.    The Policy includes coverage provisions applicable to all claims asserted herein. These coverages include the following.

40.    The Policy provides comprehensive and collision coverage with a coverage limit of ACV.

41.    The Policy defines ACV, betterment, and depreciation as follows:

1. "***Actual cash value*** is the replacement cost of the auto or property less ***depreciation*** and/or ***betterment***."

2. "***Betterment*** is improvement of the auto or property to a value greater than its pre-loss condition."
…
6. "***Depreciation*** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes."

**(Exhibit C,** Policy at 8).

42.    The Policy provides as follows relating to physical damage comprehensive and collision coverage:

3. ***Collision*** means the upset of ***your covered auto*** or ***non-owned auto***; or collision with another object including an attached vehicle.

4. ***Comprehensive*** means ***loss*** caused other than by ***collision*** and includes but is not limited to the following causes:
   a. Missiles

8

b. falling objects;
c. Fire;
d. lightening;
e. theft;
f. larceny;
g. explosion
h. earthquake;
i. windstorm;
j. hail;
k. water;
l. flood;
m. malicious mischief;
n. vandalism;
o. Riot;
p. civil commotion; or
q. colliding with a bird or animal.

(Exhibit C, Policy at 8)

43.    The Policy provides the following limit of liability for physical damage coverage:

## LIMIT OF LIABILITY

The most we will pay for *loss*:

1. is the *actual cash value* of the property at the time of the **loss**;

2. will not exceed the prevailing competitive price to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for sales any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. to personal effects arising out of one occurrence is $200;

4. to a trailer not owned by you is $500;

5. for custom parts or equipment is limited to the actual cash value of the custom parts or equipment, not to exceed the actual cash value of the vehicle.

Actual cash value of property will be determined at the time of the loss and will include an adjustment for depreciation/betterment and for the physical condition of the property.

(Exhibit C, Policy at 10)

44.     The Policy Limitation of Liability includes the option for GEICO to pay the "price to repair or replace the property at the time of loss, . . . with other of like kind and quality." ACV is less than the price to replace the Insured Vehicle "with other of like kind and quality" because ACV includes a reduction for depreciation/betterment; replacing with like kind and quality includes no depreciation/betterment reduction.

45.     The Policy defines **Loss** as follows:

### DEFINITIONS

8.     ***Loss*** means direct and accidental loss of or damage to:
a. the auto,
b. its equipment; or
c. other insured property.

The Policy's definition of **Loss** applies to both collision and comprehensive coverage. (Exhibit C, Policy at 9).

46.     The Policy does not define "total-loss."

47.     The Policy does not expressly reference the reasonably necessary vehicle replacement costs of base vehicle value, sales tax, or Regulatory Fees, but such replacement costs fall within the definition of ACV.

48.     The Policy requires GEICO to provide the same coverage for total losses under both comprehensive and collision coverage provisions.

49.     The Policy contains no provision excluding state and local Regulatory Fees from ACV.

50.     The Policy defines "covered auto" as any vehicle listed in the declaration without distinction whether owned or leased.  The Policy coverage provisions are the same for all covered autos, regardless of whether the covered auto is owned without lien, financed, or leased.

51.     Many insurers pay Regulatory Fees on Connecticut first-party total loss claims because such fees are in fact part of the replacement cost on a total loss vehicle.  GEICO pays no amounts for Regulatory Fees in violation of its Policy.

## CLASS REPRESENTATION ALLEGATIONS

52.     Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

53.     The class ("Class") includes the following:

> **All insureds, under any Connecticut policy issued by GEICO with the same material operative policy language covering a vehicle with auto physical damage coverage, who 1) made a first-party auto property damage claim during the time period of six years prior to the filing of this Complaint to the date on which an Order certifying the class is entered, 2) where such vehicle was declared a total loss, 3) whose claim was adjusted as a total loss.**

54.     Plaintiff is a member of the Class.

55.     **Numerosity**: The requirements of Rule 23(a)(1) are met. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, upon information and belief, the class members, in this case, are over 1,000, and joinder of all members is impracticable. Rule 23(a)(1).

56.     **Commonality**: The requirements of Rule 23(a)(2) are met. The central and dispositive issues in this litigation turn on the content of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Common questions include, but are not limited to, the following: (a) whether under Defendant's standardized policy language, Plaintiff

11

and Class Members are owed Regulatory Fees upon the total loss of an insured vehicle; (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to include Regulatory Fees in making payment for the total loss of an insured vehicle; and (c) whether Defendant's policy and practice of failing to include registration transfer fees in making payment for the total loss of an insured vehicle was an unfair insurance practice.

57.    **Typicality**: The requirements of Rule 23(a)(3) are met.  Plaintiff and Class Members were injured by Defendant's uniform misconduct. Plaintiff and Class Members' legal claims arise from the same core practices, the failure to pay Regulatory Fees for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members, Plaintiff suffered the same harm as all the other Class Members, and Plaintiff is not subject to unique affirmative defenses sufficient to preclude a finding of typicality. Moreover, the material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's Policy.

58.    **Adequacy**: The requirements of Rule 23(a)(4) are met. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting class actions, and Plaintiff has no interests in conflict with or antagonistic toward those of putative Class Members.  Plaintiff's local counsel has prosecuted numerous class actions and Plaintiff's proposed visiting counsel has successfully litigated other class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax and/or Regulatory Fees after total losses.

59.    **Predominance**: The predominance requirement of Rule 23(b)(4) is met. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Resolution of the common issues in this litigation will resolve

virtually the entirety of every Class Members' claims in a single stroke. There are no significant individual questions of liability or damages, and certainly not ones that predominate over issues common to the Class.

60.    **Superiority**: The superiority requirement of Rule 23(b)(4) is met. Class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is small, their interests in maintaining separate actions is questionable, and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action. Moreover, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications.

## COUNT ONE – BREACH OF CONTRACT

61.    Plaintiff realleges and reincorporates the general factual allegations from Paragraphs 1 through 60 as if fully set forth here.

62.    Plaintiff was party to an insurance contract with Defendant as described herein.  All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

63.    The interpretation of Plaintiff and all Class Members' Policy is governed by Connecticut law.

64.    Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy which was determined by Defendant to be a covered claim.

65.     Defendant adjusted the claims of Plaintiff and all Class Members as purporting to pay ACV, as defined in the Policy.

66.     Defendant, by paying the total-loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under the Policy for each Plaintiff to be paid on his or her total loss.

67.     Pursuant to the uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class Member was owed the actual cash value of the vehicle, including sales tax and Regulatory Fees, which are necessary costs to replace a vehicle.

68.     Defendant refused to pay the full ACV owed including Regulatory Fees to Plaintiff and every Class Member.

69.     Defendant's failure to provide coverage for the full ACV including Regulatory Fees constitutes a material breach of contract with the Plaintiff and every Class Member.

70.     As a result of these breaches, Plaintiff and the Class Members are entitled under Defendant's insurance policy to sums representing the benefits owed for ACV under the policy including Regulatory Fees, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

## COUNT TWO – UNFAIR TRADE/INSURANCE PRACTICES

71.     Plaintiff realleges and reincorporates the general factual allegations from Paragraphs 1 through 60 as if fully set forth here.

72.     Defendant is engaged in trade or commerce within the meaning of CUTPA.

73.     Defendant promised to pay Plaintiff and all other insureds the ACV of their insured vehicles in the event of a total loss.

74.    Defendant advertised on its website what ACV means: "Actual Cash Value:  The fair  market  value  of  property;  technically,  <u>replacement  cost  less  depreciation</u>." https://www.geico.com/information/insurance-terms/ (last visited 11/16/2020) (emphasis added).

75.    Defendant's advertised definition of ACV on its website is consistent with every auto-insurance Policy issued by Defendant in the State of Connecticut, which defines "actual cash value" as "the <u>replacement cost</u> of the auto or property less depreciation or betterment. (Exhibit C, p. 8 of 18) (emphasis added).

76.    By defining ACV as "replacement cost, less depreciation," it is reasonable for Plaintiff and other insureds to believe that Defendant would pay all costs reasonably necessary to replace a vehicle in Connecticut, including all Regulatory Fees.

77.    Despite its advertised promise to pay the ACV of the property that it defined as "replacement cost less depreciation," Defendant, as a general business practice, does not pay full replacement costs and fails to pay for costs reasonably incurred in replacing the total-loss vehicle including mandatory Regulatory Fees.

78.    Upon information and belief, Defendant fails to include reasonably necessary Regulatory Fees every time it settles a total-loss claim for first-party insureds in the State of Connecticut.

79.    Defendant's representation that it pays for replacement costs less depreciation in the event of a total loss is a misrepresentation because, as a general business practice, Defendant does not pay its insureds the cost necessary to replace their total-loss vehicles.

80.    Defendant writes its insurance Policy and sells insurance coverage under that Policy for expensive premiums. Defendant is well-aware that it promises to pay replacement cost, less depreciation, in the event of a total loss. Despite this knowledge, Defendant, as a general practice,

fails to pay full replacement costs in settling claims for total-loss vehicles by failing to pay title, registration, and inspection fees.

81.    Plaintiff and all class members relied on Defendant's representation that it would pay replacement costs, less depreciation, and pursuant to that reliance, paid for valuable insurance premiums with the intent that they would be put back to their pre-loss position in the event of a total loss to their insured vehicles.

82.    Plaintiff and class members suffered pecuniary harm as a result of Defendant's misrepresentation that it would pay for replacement costs and subsequent failure to pay for any amount for title, registration, and inspection fees.

83.    By engaging in the conduct described above, which caused the injuries and losses described above, Defendant committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA and unfair and deceptive acts or practices in the business of insurance in violation of CUIPA.

84.    These acts and omissions were unfair, immoral, unethical, oppressive, and unscrupulous, and have caused substantial injury to consumers, including Plaintiff and the Class Members.

85.    Specifically, Defendant's actions described above were unfair insurance practices in violation of CUIPA in at least one or more of the following respects among others:

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, in violation of Conn. Gen. Stat. 38a-816(6)(a);

b. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. 38a-816(6)(h)

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff Alan McNichols, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Class described above;

- For an award of compensatory damages for Plaintiff and Class Members in amounts owed under the Policy;

- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Conn. Gen Stat. Section 42-110g(d);

- For costs of suit;

- For pre and post judgment interest on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.


Dated November 20, 2020.                    Respectfully submitted:

                                            **NORMAND PLLC**

                                            */s/ Edmund A. Normand*
                                            Edmund A. Normand
                                            Admitted *Pro Hac Vice*
                                            Amy L. Judkins
                                            Admitted *Pro Hac Vice*
                                            3165 McCrory Place, Suite 175
                                            P. O. Box P. O. Box 140036
                                            Orlando, Florida 32803
                                            407.603.6031—Telephone
                                            888.974.2175—Fax

                                            David N. Rosen, Juris No. 51235
                                            **David Rosen & Associates, P.C.**
                                            400 Orange Street
                                            New Haven, CT 06511

(203) 787-3513
(203) 787-1605 fax
drosen@davidrosenlaw.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT was filed via the Court's CM/ECF system on November 20, 2020, on all counsel or parties of record on the service list.


_/s/ Edmund A. Normand_
Edmund A. Normand

18