UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Alan MCNICHOLS  )<br>    *Plaintiff*,  )<br>                               )<br>v.                              )<br>                              )<br>GEICO GENERAL INSURANCE  )<br>COMPANY  )<br>    *Defendant*.  ) | 3:20-CV-01497 (KAD)<br><br><br><br><br>JULY 21, 2021 |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS AMENDED COMPLAINT, ECF NO. 31**

Kari A. Dooley, United States District Judge:

This putative class action asks whether Defendant GEICO General Insurance Company ("GEICO"), an automobile insurer, must pay the regulatory fees necessary for its insured drivers to get back on the road following a total-loss claim. Plaintiff Alan McNichols ("McNichols" or the "Plaintiff") claims that GEICO must pay these types of regulatory or administrative fees under the terms of his insurance policy. He further asserts that, in failing to pay these fees, GEICO has run afoul of the Connecticut Unfair Trade Practices Act (CUTPA) by violating the Connecticut Unfair Insurance Practices Act (CUIPA).

Pending before the Court is GEICO's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and lack of standing pursuant to Rule 12(b)(1). GEICO seeks, in the alternative, an order enforcing an appraisal clause (the "Appraisal Clause") in the Policy against Plaintiff. For the reasons set forth below, the Court GRANTS in part and DENIES in part GEICO's motion to dismiss.

**BACKGROUND**

Plaintiff and the putative class are drivers insured by GEICO under the terms of a certain insurance policy (the "Policy"). (Ex. C. to Am. Compl.) Plaintiff owned a 2005 Toyota RAV 4

("the Vehicle"). He insured the Vehicle under the Policy, as issued by GEICO, and paid the premiums due. (Am. Compl. ¶¶ 15, 38.) On August 22, 2017, Plaintiff got into an accident while driving the Vehicle. (Am. Compl. ¶ 17.) He subsequently filed an insurance claim on the vehicle arising out of the accident. (Am. Compl. ¶ 17.)

GEICO, finding that the cost to repair the Vehicle exceeded the value of the Vehicle, decided to pay McNichols the adjusted value of the Vehicle, less the deductible that applied to the Policy. (Am. Compl. ¶¶ 19, 22–25.) GEICO hired a vendor to determine how much the Vehicle was worth, and on August 24, 2017, GEICO provided Plaintiff $7,189.11 as settlement for his insurance claim.[1] (Am. Compl. ¶ 21, 23.)

However, Plaintiff alleges that, to replace the Vehicle, Plaintiff will need to pay reasonably necessary "Regulatory Fees," which include Title, Registration, and Inspection Fees, before taking any new vehicle on the road. (Am. Compl. ¶¶ 29–38.) Title Fees could run up to $46.00, depending on whether there was a lien on the vehicle. (Am. Compl. ¶ 30.) Registration Fees, meanwhile, could include a $132.00 Registration Fee, a $5.00 Plate Fee, a $15.00 Clean Air Act Fee, a $10.00 Lien Fee, and a $15.00 Passport to the Parks Fee. (Am. Compl. ¶ 32.) As for Inspection Fees, those could include a $40.00 Emissions Exemption Fee, a $20.00 Emissions Testing Fee, and a $10.00 Greenhouse Gas Fee. (Am. Compl. ¶ 34.)

While listing these various fees, Plaintiff specifically alleges that he is still owed either $91.00 or $106.00 for reasonably necessary Regulatory Fees and that the Policy entitles him to recover those fees.[2] (Am. Compl. ¶¶ 35, 36.)

---

[1] The vendor determined this total by finding that the "Base Value" of Plaintiff's RAV 4 was $7,230.00. The vendor then added $459.11 to that total in taxes to arrive at a "Total Value" of $7,689.11. Subtracting the $500 deductible for the Policy provides the settlement amount of $7,189.11. (Ex. B to Am. Compl.)

[2] Plaintiff explicitly states that he is owed $91 in paragraph 36 of the Amended Complaint but totaling the fees that he claims to be owed in paragraph 35 results in a sum of $106. The Court need not determine which claim is correct for purposes of this motion.

**PROCEDURAL HISTORY**

Plaintiff first brought this putative class action in Connecticut Superior Court on September 3, 2020. (ECF No. 1.) GEICO, invoking this Court's jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), filed a timely notice of removal on October 1, 2020. (ECF No. 1.) On October 30, 2020, GEICO filed a motion to dismiss Plaintiff's Complaint, and that motion was withdrawn after Plaintiff filed the operative Amended Complaint on November 20, 2020. (ECF Nos. 26, 27.)

GEICO then moved to dismiss the Amended Complaint on December 11, 2020. (ECF No. 31.) The motion was fully briefed on January 28, 2021. (ECF No. 39.)

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to standing, like the one made by GEICO, is similar to that required under Rule 12(b)(6). When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it, "the plaintiff has no evidentiary burden." *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Carter*, 822 F.3d 56–57.

**DISCUSSION**

GEICO seeks to dismiss Plaintiff's Amended Complaint for (1) failure to state a claim and (2) lack of standing. In the alternative, GEICO asks for enforcement of the Policy's Appraisal Clause. The main thrust of GEICO's argument across these three issues is that the Policy is unambiguous and it simply does not provide for the payment of Regulatory Fees. Accordingly, GEICO asserts that it has met its obligations and the Plaintiff cannot state a claim for relief under the terms of the Policy. Plaintiff responds that the Policy is ambiguous on this issue and that, therefore, his claims should not be dismissed.

***Standing***

The Court begins, as it must, with the jurisdictional issue of whether Plaintiff has established, through his allegations, standing to bring his claims. *See e.g.*, *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991) ("Because standing is jurisdictional under Article III of the United States Constitution . . . it is a threshold issue in all cases since putative plaintiffs lacking standing are not

entitled to have their claims litigated in federal court.") (citation omitted). The "irreducible constitutional minimum" of standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citations omitted).

GEICO summarily argues that Plaintiff "cannot seek recovery of damages that he did not incur" insofar as Plaintiff pleaded facts that described several Regulatory Fees that he did not actually pay. (Def.'s Reply 9, ECF No. 39.) Consequently, Plaintiff should be barred from bringing any claims connected to these fees. As a general proposition, GEICO is not wrong: a plaintiff who suffers no injury in fact has no Article III standing. *Spokeo*, 136 S. Ct. at 1547. But GEICO conflates the merits of the claim with the jurisdictional inquiry into whether Plaintiff has sufficiently pleaded 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This placing of the proverbial horse before the cart in an effort to defeat standing cannot abide. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946).

Here, Plaintiff has alleged that he suffered an injury in fact, to wit, underpayment of what he was owed under the Policy. Accordingly, Plaintiff has standing to bring his breach of contract claim and his CUTPA claim because he has sufficiently plead an interest in an allegedly breached contract and because he has sufficiently plead an injury under CUTPA that this Court can redress. *See SMKids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) ("The Supreme Court has confirmed that a challenge does not implicate Article III standing when it 'simply presents a straightforward issue of contract interpretation.'") (quoting *Perry v. Thomas*, 482 U.S. 483, 492

5

(1987)); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92 (2d Cir. 2018) (finding standing where the plaintiff indicated that she had suffered an injury flowing from a CUTPA violation). *See also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

**Failure to State a Claim**

GEICO seeks dismissal of both the breach of contract claim and the CUTPA claim. As to the breach of contract claim, GEICO asserts that because the Policy is unambiguous and does not require the payment of Regulatory Fees, Plaintiff cannot state a claim for breach of contract for failing to pay such fees. As to Plaintiff's CUTPA claim, GEICO asserts that this claim is nothing more than a reiteration of the breach of contract claim, and, in any event, the Plaintiff has not alleged a CUIPA violation with the specificity necessary to avoid a motion to dismiss.

<u>Breach of Contract</u>

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *CCT Communications, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133, 172 A.3d 1228 (2017) (quotations omitted). Here, the parties do not dispute the existence of a contract or whether Plaintiff performed under that contract, and both of these elements are well-pleaded in the Amended Complaint. (Am. Compl. ¶¶ 16, 38.) And although the parties disagree about whether Plaintiff suffered any damages, this disagreement derives from the parties' respective positions on the issue of breach.

Where parties have such a dispute over whether a breach occurred, "a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous," which is a

question of law. *See Walker v. People's United Bank*, 305 F. Supp. 3d 365, 374 (D. Conn. 2018) (quoting *Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*, 860 F.3d 152, 156 (2d Cir. 2016)). Different interpretations of a contract do not necessitate a finding that a policy is ambiguous. *Connecticut Ins. Guaranty Ass'n v. Drown*, 314 Conn. 161, 188, 101 A.3d 200 (2014). Instead, the question is whether the language is susceptible to more than one *reasonable* interpretation. *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 115 (D. Conn. 2014) (citations omitted) (emphasis added). "[W]here each party has a reasonable but different interpretation of the phrases supported by dictionaries and case law, that indicates that the phrases are ambiguous . . . ." *Roberts v. Liberty Mutual Fire Ins. Co.*, 264 F. Supp. 3d 394, 404 (D. Conn. 2017) (citations and quotations omitted). Therefore, if a plaintiff demonstrates some ambiguity in the contract, and pleads facts sufficient to make a breach plausible, a motion to dismiss should be denied. *See Walker*, 305 F. Supp. 3d at 374–75.

Here, GEICO argues that the automobile insurance policy at issue is unambiguous and that the Policy does not provide coverage for Regulatory Fees. In the portion of the Policy labeled "**SECTION III – PHYSICAL DAMAGE COVERAGES**," the Policy generally provides coverage for "*loss*" resulting from physical damage and theft. The Policy defines *loss* as "direct and accidental loss of or damage to: (a) the auto; (b) its equipment; or (c) the other insured property." Here, the *loss* is "the direct and accidental loss of … the auto."[3] Under a heading titled "PAYMENT OF *LOSS*," GEICO reserves the right to "(a) pay for the *loss*; or (b) repair or replace the damaged or stolen property."

---

[3] From this language, GEICO asserts that the coverage unambiguously does not include Regulatory Fees. As discussed *infra*, the Court rejects this argument.

When GEICO decides to pay for the *loss*, as was the situation in this case, GEICO's payment obligation is limited. In the "**LIMIT OF LIABILITY**" subsection, the Policy states, as pertinent here:

> The most we will pay for *loss*:
> **1.** is the ***actual cash value*** of the property at the time of the ***loss***;[4]

"***Actual cash value***" is defined in the Policy as "the replacement cost of the auto or property less ***depreciation*** or ***betterment***."[5] Plaintiff alleges that, under the terms of the Policy, when the vehicle is a "total loss,"—a term well known and oft used by GEICO that refers to a situation in which the cost to repair or replace the vehicle exceeds the value of the vehicle—GEICO determines the ***actual cash value*** of the vehicle in order to settle the claim.

The Plaintiff does not dispute that this "**LIMIT OF LIABILTY**" provision is clear that GEICO will pay no more than the ***actual cash value*** of the vehicle at the time it was damaged or lost. Rather, the dispute turns on whether the phrase "replacement cost"—as used in the definition of ***actual cash value***—includes Regulatory Fees. If "replacement cost" does include Regulatory Fees, then so too would the vehicle's ***actual cash value***, thereby increasing GEICO's limit of liability, and as Plaintiff asserts, the amount owed in a total-loss situation.

The Court concludes that the Policy is ambiguous on the question of whether the Regulatory Fees sought by the Plaintiff are included within the term ***actual cash value*** principally because the term used to define ***actual cash value***, "replacement cost," is itself, ambiguous. *See Desai v. GEICO Casualty Company*, 478 F. Supp. 3d 609, 615 (N.D. Ohio 2020). "Replacement

---

[4] The Limit of Liability section includes an additional limit which neither party asserts has application here.
[5] Though not pertinent to the question presented here, "***depreciation***" means "a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes" and "***betterment***" means "improvement of the auto or property to value greater than its pre-loss condition."

8

cost" is not defined in the Policy, and, despite GEICO's contention to the contrary, the context in which it is used does not render it unambiguous.

The Court begins by looking to dictionary definitions to determine whether the term "replacement cost" is subject to different, reasonable interpretations. *See Karas*, 33 F. Supp. 3d at 115 (finding it appropriate to turn to dictionary definitions where a term is not defined in an insurance policy) (citations omitted). Lay dictionaries define "replacement cost" as "the current cost of a replacement for a particular item, especially as opposed to its original cost" or "the current cost of replacing a fixed asset with a new one of equal effectiveness." "Replacement Cost," *Oxford English Dictionary Online* (last visited July 7, 2021); "Replacement Cost," *Merriam-Webster's Unabridged Dictionary* (online ed.) (last visited July 7, 2021). *Black's* defines the replacement cost as "[t]he cost of a substitute asset that is equivalent to an asset currently held . . . [t]he new asset has the same utility but may or may not be identical to the one replaced." "Replacement Cost," *Black's Law Dictionary* (11th ed. 2019). All of these definitions could reasonably be read to include the costs of Regulatory Fees imposed when replacing a total-loss vehicle with one "of equal effectiveness" or "equivalent to" the total-loss vehicle. A substitute asset would not be equally effective or equivalent to the original item if it could not be used in the same way, *i.e.*, registered and able to be legally driven, if the Regulatory Fees were not paid for the substitute asset.

The cases relied upon by GEICO for the proposition that regulatory fees are not covered under the insurance policy—*Sigler v. GEICO Casualty Company*, 967 F.3d 658 (7th Cir. 2020) and *Barlow v. Gov't Emps. Ins. Co.*, No. 19-cv-3349(PKC)(RML), 2020 WL 5802274 (E.D.N.Y. Sept. 29, 2020), both of which examined substantially similar insurance policies—are inapposite or otherwise rejected. First, both cases illustrate that respective state laws and regulations can serve

to remove any ambiguity inherent in the term ***actual cash value*** by setting default rules for insurance policies. *Sigler*, 967 F.3d at 661 ("An Illinois insurance regulation specifically addresses when an auto insurer must pay sales tax and title and tag transfer fees in a total-loss claim, and the regulation is incorporated into the policy as a default term as a matter of law."); *Barlow*, 2020 WL 5802274, at *6 ("[New York State] Regulation 64, effectively written into the Policy, while providing for the reimbursement of sales tax, does not require payment of ancillary fees, such as license and tag fees."). *See also Singleton v. Elephant Insurance Co.*, 953 F.3d 334, 337–338 (5th Cir. 2020) (finding that, pursuant to Texas state law, "actual cash value" means "fair market value" and does not include Regulatory Fees). GEICO points to no such similar regulation or law in Connecticut and the Court has located none.

Second, both of these cases conclude, with one citing the other, that the insured has confused a limit of liability, wherein the term "replacement cost" is found, and the policy's coverage provisions, which state only that the insurer will pay for the loss. *Sigler*, 967 F.3d at 660; *Barlow*, 2020 WL 5802274, at *4. However, neither court provides any analysis as to why the coverage for ***loss***, as defined under the Policy to mean "loss of or damage to" an insured vehicle, does not include Regulatory Fees. They simply, summarily assert that a limit of liability section cannot be asserted as the basis of a coverage claim, without addressing the interplay between all of these contract terms. And although it may ultimately be determined, as *Sigler*, *Barlow*, and GEICO sustain, that GEICO has no obligation to cover Regulatory Fees because those fees are not part of the ***loss***, this conclusion is not unambiguously required under the terms of the Policy. As argued by Plaintiffs, and as alleged in the Amended Complaint to be the situation here, an insured's ***loss*** (however determined) might exceed the automobile's value, thereby triggering the limit of liability section. And if the ***actual cash value*** includes Regulatory Fees, a question on which the

10

Policy is ambiguous, then GEICO would, under those circumstances, be required to pay Regulatory Fees. *See Roberts*, 264 F. Supp. 3d at 404 (noting that the language of an insurance policy "must be construed in the circumstances of a particular case and *cannot be found to be ambiguous or unambiguous in the abstract*") (quoting *Lexington Ins. Co. v. Lexington Healthcare Group.*, 311 Conn. 29, 42, 84 A.3d 1167 (2014) (emphasis in the original)).

The motion to dismiss the breach of contract claim is DENIED.

*CUTPA Claim*

Plaintiff's claim pursuant to the Connecticut Unfair Trade Practices Act (CUTPA) is based on an alleged violation of the Connecticut Unfair Insurance Practices Act (CUIPA). Although CUIPA itself does not provide for a private right of action, "[a] plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) (quotations omitted). "To succeed in such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Id.* at 165 (citing *McCulloch v. Hartford Life and Accident Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005)).

Plaintiff alleges two separate violations of CUIPA, both of which pertain to unfair settlement practices: Conn. Gen. Stat. §§ 38a-816(6)(A) and 38a-816(6)(H).[6] In bringing such a claim, "the plaintiff must allege that the 'defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice.'" *Traylor v. Awwa*, 899 F. Supp. 2d 216,

---

[6] The statute provides. "The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance: . . . (6) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following: (A) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; . . . (H) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application."

11

226 (D. Conn. 2012) (quoting the statute and *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 672, 613 A.2d 838 (1992)); *see also Prucker v. Am. Economy Ins. Co.*, 2019 WL 2880369, at *5–*7, 68 Conn. L. Rptr. 626 (Conn. Sup. Ct. May 31, 2019) (discussing the pleading standards for a CUIPA-based CUTPA claim in both federal and Connecticut state courts). Moreover, although a breach of contract claim may be a predicate for these types of unfair settlement practice claims, a well-pleaded complaint must also contain some allegation that the insurer engaged in unlawful general business practices that go beyond a simple coverage dispute. *See Roberts*, 264 F. Supp. 3d at 416 ("[A] claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract.") (citations omitted); *Tucker v. Am. Int'l Group*, 179 F. Supp. 3d 224, 237, 237 n.24 (D. Conn. 2016) ("Until the Connecticut Supreme Court states otherwise, the focus of a CUIPA/CUTPA claim is on the alleged conduct of the insurer and not the actual terms of the contract, or the plaintiff's ability to recover under it.") (quotations and citations omitted). *See also Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1038–39 (2d Cir. 1995) (citing numerous Connecticut cases for the proposition that a simple breach of contract claim cannot be the basis for a CUTPA violation).

Plaintiff alleges that GEICO misrepresents the effect of its policy provisions through advertising on GEICO's website and that he and the putative class relied on these types of representations in selecting an insurance policy. (Am. Compl. ¶¶ 73–81.) Plaintiff also alleges that he and the putative class suffered pecuniary harm as a result of these misrepresentations. (Am. Comp. ¶ 82.) These allegations, even accepted as true, do not constitute a violation of Conn. Gen. Stat. § 38a-816(6)(A) because none of the allegations occurred in the context of claims settlement. *See Tucker*, 179 F. Supp. 3d at 237 ("The insurer's liability is based on its conduct in processing, investigating, and settling—or failing to settle—insureds' claim and on the insurer's claims

settlement policies in general.") (quotations and citations omitted). Rather, the allegations pertain to the events which led the plaintiffs to choose GEICO in the first instance.[7] And to the extent that Plaintiff relies on the Policy's provision itself as a misrepresentation of his coverage, he fails to distinguish this claim from the coverage dispute set forth in his breach of contract claim. *See Boulevard Associates*, 72 F.3d at 1038–39; *see also Tucker*, 179 F. Supp. 3d at 236 ("[I]n a CUIPA/CUTPA action, the insurer's duty arises not from the terms of the private insurance agreement, but from the statutory duty not engage in unfair business practices.") (citation omitted). Plaintiff has therefore failed to establish a plausible violation of Conn. Gen. Stat. § 38a-816(6)(A).

Plaintiff's claims of a Section 38a-816(6)(H) violation fair no better. The unfair settlement practices made illegal under this subsection include "attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by ***reference to written or printed advertising material accompanying or made part of an application.***" (Emphasis added.) The Complaint contains no allegations that GEICO, in denying the claim for Regulatory Fees, referenced any advertising material accompanying or made a part of the application. Indeed, GEICO appears to have relied entirely on the terms of the Policy to settle Plaintiff's claim—a fact which does not appear to be in dispute. Nor, to the extent germane to the inquiry, has Plaintiff alleged that there was any advertising material that *accompanied or was made part of* his application. Plaintiff has not, therefore, plausibly stated a violation of Section 38a-816(6)(H). *See Belz*, 46 F. Supp. 3d at 165 (citations omitted).

---

[7] Notably, if Plaintiff relied on deceptive advertising and the terms of the Policy to pay "valuable insurance premiums," then Plaintiff suffered an injury as soon as he (over)paid his premium for coverage he did not have, not when he was denied payment of Regulatory Fees during the claims settlement process. (See Am. Compl. ¶¶ 81–82.) Here, Plaintiff does not seek a return of premiums.

Because these allegations do not constitute CUIPA violations as to Plaintiff, the Court forgoes an analysis of whether the alleged conduct constitutes a general business practice. The motion to dismiss the CUTPA/CUIPA claim is GRANTED.

***Appraisal Clause***

Finally, GEICO urges the Court to enforce the Appraisal Clause in Plaintiff's policy if his claims are not dismissed on other grounds. GEICO supports its position by citing to Connecticut law generally and arguing that appraisal clauses are mandatory and essentially an agreement to arbitrate. The Appraisal Clause provides:

> If we and the ***insured*** do not agree on the amount of the ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award by any two will determine the amount of ***loss*** . . . We will not waive our rights by any of our acts relating to appraisal.

Plaintiff makes several arguments in response, including that the request for an order for appraisal is untimely, that he did not agree to arbitrate the issue before the Court, that GEICO does not identify an arbitrable issue, that other courts have refused to enforce like requests, and that even if the Court were to decide that the dispute was one amenable to appraisal, the Court should stay the appraisal until the conclusion of this suit.

The Court must first determine the nature of the Appraisal Clause. Under the Federal Arbitration Act and federal common law,[8] "an enforceable arbitration clause in a contract is one

---

[8] GEICO's invocation of Connecticut law is inapposite as to whether the appraisal clause should be enforced because "[t]he [Federal Arbitration Act] applies when there is federal subject matter jurisdiction, *i.e.*, diversity jurisdiction . . . and when the contract calling for arbitration 'evidenc[es] a transaction involving interstate commerce.'" *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991) (quoting 9 U.S.C. § 2 and citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)); *see also Milligan*, 920 F.3d at 150–52 (applying federal law and declining to apply state law to determine if an appraisal clause constituted an arbitration clause).

'that clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution.'" *Milligan v. CCC Information Services Inc.*, 920 F.3d 146, 151 (2d Cir. 2019) (quoting *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988)); *see also* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Here, the parties do not dispute that they have a valid, written agreement, and "[t]here can be no doubt that an automobile insurance policy is a contract that affects interstate commerce." *Government Employees Ins. Co. v. Grand Medical Supply, Inc.*, No. 11 Civ. 5339(BMC), 2012 WL 2577577, at *2 (E.D.N.Y. July 4, 2012) (citing *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)). Moreover, the plain terms of the Appraisal Clause indicate that any dispute about the amount of *loss* will be submitted to a disinterested person—the umpire—and that "an award of any two [of the parties' appraisers and the umpire] *will* determine the amount of *loss*." (Emphasis on "will" added.) Consequently, the Policy's Appraisal Clause is an agreement to arbitrate. *See Milligan*, 920 F.3d at 152 (finding that a substantially similar appraisal clause in a GEICO auto insurance policy to be an arbitration clause under the Federal Arbitration Act).[9]

The Court next looks to the terms of the Appraisal Clause to determine if the parties intended to arbitrate the instant dispute. *See, e.g.*, *Lucy v. Bay Area Credit Service LLC*, 792 F.

---

[9] Even if this issue is analyzed under state law, as urged by GEICO, the Appraisal Clause would still be an arbitration clause. An appraisal clause may fall within the scope of Connecticut's arbitration statutes if the appraisal clause represents a voluntary submission of an existing or future dispute to a disinterested person or persons for final determination. *See Covenant Ins. Co. v. Banks*, 177 Conn. 273, 280, 413 A.2d 862 (1979); *see also A Better Way Wholesale Autos, Inc. v. Republic-Franklin Ins. Co.*, 2016 WL 1444054, at *2, 61 Conn. L. Rep. 877 (Conn. Super. Ct. Mar. 22, 2016) (applying *Banks* to determine that an appraisal clause in an automobile insurance policy was not an arbitration clause because the clause did not provide a mechanism for reaching a final determination of the parties' dispute).

15

Supp. 2d 320, 323 (D. Conn. 2011) ("Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quotations and citations omitted). Whether an arbitration clause applies to a particular dispute is a question for the court, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quotations and citations omitted).[10] Although a somewhat nuanced distinction, the parties here do not dispute the "amount of the *loss*" as a factual matter, *i.e.*, whether the car was worth $7,000 or $8,000. Such a dispute would clearly come within the scope of the Appraisal Clause because the clause is a mechanism for settling such factual disputes. Instead, the parties dispute whether GEICO's definition of the *actual cash value* sets the appropriate limit of liability for the covered *loss* by failing to include Regulatory Fees as part of the "replacement cost" of the vehicle.

In other words, the parties have a dispute about the Policy's terms, and the Appraisal Clause is not an agreement to arbitrate disputes about the meaning of the Policy itself. Indeed, the questions about the meaning of *loss* or *actual cash value*, which involve the definition of contractual terms, are legal questions that must be resolved by the Court rather than an appraiser. *See Milligan*, 920 F.3d at 152. ("An appraiser may not resolve coverage disputes raising legal question about the interpretation of an insurance policy.") (citing *Amerex Group, Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 204–05 (2d Cir. 2012)). As other courts have noted, "[a] basic proposition of insurance law provides that 'the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the

---

[10] Connecticut law is notably similar. *Security Ins. Co. of Hartford v. DeLaurentis*, 202 Conn. 178, 183, 520 A.2d 202 (1987) ("Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.").

16

amount of loss for which an insurer is liable.'" *Amerex Group, Inc.*, 678 F.3d at 204 (2d. Cir. 2012) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005)).

For all of these reasons, the Court declines to enforce the Policy's appraisal provision as requested.

**CONCLUSION**

For the forgoing reasons, GEICO's motion to dismiss is DENIED as to Count One and GRANTED as to Count Two. Further, the Appraisal Clause will not be enforced as a means to resolve this dispute.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of July 2021.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE